**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| NWL HOLDINGS, INC., et al., | ) | Case No. 08-12847 (MFW) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ALFRED T. GIULIANO, TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-53535 (MFW) |
| | ) | |
| RPG MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION[1]

Before the Court is the Motion for Summary Judgment filed by RPG Management, Inc. ("RPG) on the Complaint to Avoid and Recover Preferential and Fraudulent Transfers and Objection to RPG's claim filed by Alfred T. Giuliano (the "Trustee").  For the reasons set forth below, the Court will grant RPG's Motion in part and deny it in part.

I.   BACKGROUND

On November 10, 2008 (the "Petition Date"), NWL Holdings, Inc., and its affiliates (the "Debtors") filed voluntary

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 52 of the Federal Rules of Civil Procedure incorporated by Rule 7052 of the Federal Rule of Bankruptcy Procedure.

petitions for relief under chapter 11 of the Bankruptcy Code.  On February 26, 2009, the Court converted the case to chapter 7 and the Trustee was appointed.

RPG manages risk purchasing groups covering various businesses throughout the United States.  In other words, RPG combines the purchasing power of many businesses to create insurance policies that are more advantageous for its clients. Prior to their liquidation, the Debtors were members of Food Merchants Risk Purchasing Group, Inc., one of RPG's clients. RPG, as part of its services, made premium payments on behalf of the Debtors for the insurance purchased by them.  The Debtors, in turn, made payments to RPG for ongoing and future insurance coverage.  The Debtors' failure to make timely payments to RPG could result in cancellation of their policy.  The insurance coverage was necessary for the Debtors to continue doing business.  Prior to and during the course of the Debtors' bankruptcy case, the Debtors had insurance coverage until June 11, 2009, when their policy expired.  On March 25, 2009, RPG filed a proof of claim for $940,922 of which $532,336.67 was asserted as an administrative expense.

Within 90 days prior to the Petition Date, the Debtors made four payments to RPG (the "Prepetition Transfers") as follows:

| Payment Type | Check Date | Clear Date | Due Date | Amount |
|---|---|---|---|---|
| Check | 8/11/2008 | 8/19/2008 | 8/11/2008 | $ 218,100 |

2

| Check | 10/6/2008 | 10/9/2008 | 9/11/2008 | $ 34,000 |
|-------|-----------|-----------|-----------|----------|
| Check | 10/6/2008 | 10/9/2008 | 9/11/2008 | $ 540,000 |
| Wire Transfer | 11/3/2008 | 11/3/2008 | 7/25/2008 | $ 12,950 |
| **Total** | | | | **$ 805,050** |

On October 25, 2010, the Trustee filed a Complaint against RPG seeking (1) avoidance of the Prepetition Transfers as preferences pursuant to section 547, (2) avoidance of the Prepetition Transfers as fraudulent conveyances pursuant to section 548, (3) avoidance of any postpetition transfer made on any prepetition debt pursuant to section 549, (4) recovery of avoidable transfers pursuant to section 550, (5) disallowance of RPG's claims pursuant to section 502(d), and (6) attorney's fees and costs.  RPG answered the Complaint denying all allegations. RPG then filed the Motion for Summary Judgment on counts (1) and (5).[2]  The Motion has been fully briefed and is ripe for decision.


II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334(b), 157(a) & (b)(1). This adversary proceeding is a core proceeding to be heard and determined by the Bankruptcy Court.  28 U.S.C. §§ 157(b)(2)(A),

---

[2] Although RPG does not characterize the motion as one for partial summary judgment, the motion addresses only two of the six counts in the Complaint.

(B), (E) & (F).  The parties have raised no objection to the
Court rendering a final judgment in this proceeding.


III. <u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment under Rule 56
of the Federal Rules of Civil Procedure, incorporated by Rule
7056 of the Federal Rules of Bankruptcy Procedure, the court must
determine "if the pleadings, the discovery and disclosure of
materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).
If there does not appear to be a genuine issue as to any material
fact and on such facts the movant is entitled to judgment as a
matter of law, then the court shall enter judgment in the
movant's favor.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24
(1986).  A fact is material when it could "affect the outcome of
the suit . . . ."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).

The movant bears the burden of establishing that no genuine
issue of material fact exists.  <u>Matsushita Elec. Indus. Co., Ltd.
v. Zenith Radio Corp.</u>, 475 U.S. 574, 585 n. 10 (1986); <u>Integrated
Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Group, Inc.)</u>, 377
B.R. 471, 475 (Bankr. D. Del. 2007).  Inferences from the record
should be viewed in the light most favorable to the non-moving

party.  Anderson, 477 U.S. at 255; Hollinger v. Wagner Mining

Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981); Ness v. Marshall,

660 F.2d 517, 519 (3d Cir. 1981) ("courts are to resolve any

doubts as to the existence of genuine issues of fact against the

moving parties").

Once the moving party has established a prima facie case in

its favor, the party opposing summary judgment must go beyond the

pleadings and point to specific facts showing there is a genuine

issue of fact for trial.  See Anderson, 477 U.S. at 252;

Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d

118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford

Accidents and Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).  If

the moving party offers only speculation and conclusory

allegations in support of its motion, its burden of proof is not

satisfied.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172

F.3d 238, 252 (3d Cir. 1999).


IV.  DISCUSSION

A.  Preferential Transfers

At the heart of this Motion is whether the Prepetition

Transfers constitute a preference pursuant to section 547.  RPG

argues that the Trustee has failed, as a matter of law, to

establish a prima facie case under section 547(b).  In the

alternative, RPG asserts several defenses under section 547(c):

that the Prepetiton Transfers were a contemporaneous exchange for
new value, that they were done in the ordinary course of
business, and that they gave new value to or for the benefit of
the Debtors.  The Trustee, of course, disagrees with RPG and
asserts that he has made a proper prima facie showing that the
Prepetition Transfers constitute a preference and that RPG's
section 547(c) defenses are without merit.

    1.    Section 547(b)

    In order to make a prima facie showing under section 547(b),
the Trustee must establish that the Prepetition Transfers were:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent
> debt owed by the debtor before such
> transfer was made;
> (3) made while the debtor was insolvent;
> (4) made -
>    (A) on or within 90 days before the
>    date of the filing of the petition;
>    . . .
> (5) that enables such creditor to
> receive more than such creditor would
> receive if -
>    (A) the case were a case under
>    chapter 7 of this title;
>    (B) the transfer had not been made;
>    and
>    (C) such creditor received payment
>    of such debt to the extent provided
>    by the provisions of this title.

11 U.S.C. § 547(b).  "Unless each and every one of these elements
is proven, a transfer is not avoidable as a preference under 11
U.S.C. § 547(b)."  Waslow v. The Interpublic Group of Cos. (In re
M Group, Inc.), 308 B.R. 697, 700 (Bankr. D. Del. 2004).  The

burden is on the plaintiff to prove each element.  11 U.S.C. §
547(g).  See Schwartz v. Pennsylvania Dept. of Revenue, 93 B.R.
342, 344 (E.D. Pa. 1988) ("In an action to avoid a transfer under
11 U.S.C. § 547(b), the burden of proof is on the trustee . . .
to prove by a preponderance of the evidence each of the elements
of a voidable transfer.").

### a.   To or for the Benefit of a Creditor

The first element of an avoidable preference is that the
transfer is "to or for the benefit of a creditor . . . ."  11
U.S.C. § 547(b)(1).  The Bankruptcy Code defines a creditor as an
"entity that has a claim against the debtor that arose at the
time of or before the order for relief concerning the debtor."
11 U.S.C. § 101(10).

RPG argues that it is not a creditor as understood by the
Code because the Debtors had no obligation to pay RPG before they
made their payment and did not owe RPG for previous services
rendered.  Rather, according to RPG, payments made by the Debtors
were for future services and failure to pay would simply result
in cancellation of the insurance policy with no resulting claim.
In contrast, the Trustee argues that RPG is a quintessential
creditor under the meaning of the Code because RPG was in fact
owed money for services it rendered.

The Court agrees with the Trustee.  Even if RPG could have
terminated the policies for failure to pay, it did not do so.

7

Instead, RPG continued to provide insurance coverage even after the Debtors missed payments and simply asserted a claim against the Debtors for those payments.  RPG's status as a creditor is confirmed by its filing of a proof of claim in the bankruptcy case for those missed payments.  Therefore, the Court finds that RPG was a creditor for whom the Prepetition Transfers provided a benefit.

b.  <u>Antecedent Debt</u>

The second element of an avoidable preference is that the transfer be made "on account of an antecedent debt owed by the debtor before such transfer was made . . . ."  11 U.S.C. § 547(b)(2).  An antecedent debt arises when the debtor becomes legally bound to pay before the transfer by the debtor is made.  <u>See</u> <u>SEC v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.)</u>, 180 F.3d 504, 511 (3d Cir. 1999) ("Courts which have considered this issue have concluded, consistent with the statutory definitions, that an antecedent debt owed by the debtor occurs when a right to payment arises . . . ."); <u>The Fonda Group, Inc v. Marcus Travel (In re The Fonda Group, Inc.,)</u>, 108 B.R. 956, 959 (Bankr. D.N.J. 1989) ("Although the term 'antecedent debt' is not defined by the Code, the debt is 'antecedent' when the debtor becomes legally bound to pay before the transfer is made.").

RPG contends that the Prepetition Transfers cannot be on

account of pre-existing debt because they are not on account of
any debt.  According to RPG, the Prepetition Transfers were
intended for future services, which had yet to be rendered.  The
Trustee disagrees, arguing that the Prepetition Transfers were on
account of an outstanding indebtedness that occurred prior to the
time the payments became due.  Therefore, the Trustee contends
that the payments were on account of an antecedent debt.

Here, there is no dispute that the premium installment due
date was before the period of insurance coverage it paid.
However, the Debtors did not pay the insurance premiums on time.
On the contrary, the clear date[3] of each check and the wire
transfer that make up the Prepetition Transfers establish that
the payments were past due.  The failure to make those payments
on time made them a payment on account of an antecedent debt.
See Peltz v. United Health Care (In re Bridge Info. Sys., Inc.),
299 B.R. 567, 571 (Bankr. E.D. Mo. 2003) ("Accordingly, a debt is
antecedent to the challenged payment under § 547(b)(2) if the
creditor would have had a claim against the debtor's estate prior
to the challenged payment.").  Therefore, the Court finds that

---

[3]  There are two dates to consider for the purpose of a
preference when a payment is made by check, the delivery date and
the date the check was honored by the drawee bank (otherwise
known as the clear date).  The clear date is considered the date
of transfer under section 547(b).  See Barnhill v. Johnson, 503
U.S. 393, 394-95 (1992) (finding that whether a transfer occurred
within the 90-day preference period is determined by the date the
check is honored).  Here, the clear date of each check was after
it was due.  The wire transfer, which cleared the same day, was
also received months after it was due.

the Trustee has established that the Prepetition Transfers were on account of an antecedent debt.[4]

   c.   Insolvency

The third element of an avoidable preference requires that the transfer be "made while the debtor was insolvent . . . ." 11 U.S.C. § 547(b)(3). For the purpose of preferential transfers, it is presumed that the debtor is insolvent for the 90-day period before the date of filing. 11 U.S.C. § 547(f). Here, RPG has offered no evidence to rebut the presumption. Therefore, the Court finds that the Debtors were insolvent at the time of the Prepetition Transfers.

   d.   On or within 90 Days before the Filing

The fourth element of a voidable preference requires that for non-insiders the transfer be made "on or within 90 days before the date of filing the petition . . . ." 11 U.S.C. § 547(b)(4)(1). For the purpose of determining whether a transfer was on or within the 90-day preference period, the transfer occurs on the clear date. Barnhill, 503 U.S. at 394-95. The

---

   [4]  RPG also argues that the debts were not antecedent because the payments resulted in no diminution of the estate. See, e.g. Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp. (In re Schwinn Bicycle Co.), 200 B.R. 980 (Bankr. N.D. Ill. 1996) (holding that installment payments of insurance premiums were not preferential because they did not diminish the estate where the payments provided the debtor the value of continued insurance coverage). RPG and the Schwinn Court, by discussing the diminution of value, seem to be injecting the contemporaneous exchange for new value defense of section 547(c) into section 547(b). That defense is addressed in Part (IV)(2), infra.

clear date of all the Prepetition Transfers occurred after August
12, 2008, which is the ninetieth day before the Petition Date.
As a result, the Court finds that the Prepetition Transfers
occurred within the 90-day preference period.

> e.    Receipt of More Than Would be Received on
>       Liquidation

The fifth and final element of an avoidable transfer is that
the creditor receive more than it would have in a chapter 7
liquidation.  11 U.S.C. § 547(b)(5).  Referred to as the "greater
amount test," it requires a determination of what the creditor
would have received as part of a proper distribution under a
chapter 7 liquidation.  See Alvarado v. Walsh (In re LCO
Enters.), 12 F.3d 938, 941 (9th Cir. 1993) (noting that the
greater amount test "requires the court to construct a
hypothetical chapter 7 case and determine what the creditor would
have received if the case had proceeded under chapter 7").
Because RPG received 100% of what it was owed for each of the
Prepetition Transfers, the Court need only find that RPG would
have received less than 100% in a chapter 7 liquidation.

RPG argues that the Trustee has offered no evidence
regarding the estimated distribution to creditors in this case.
In an answer to a request for production of documents relating to
such information, the Trustee stated that he had no responsive
documents.  In response to this Motion, however, the Trustee
filed the Declaration of Michael Infanti, who stated that

11

unsecured creditors are not expected to receive a 100% dividend in this bankruptcy case.  RPG contends that the declaration of Mr. Infanti is improper and should be found invalid as it does not comport with Rule 56.

Rule 56(c)(4) addresses the use of affidavits as evidence in determining a matter on summary judgment.  It requires that an affidavit must be "[1] made on personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

RPG contends that the Infanti declaration is deficient because it fails to state that it is based on personal knowledge and that Mr. Infanti is competent to testify.  However, there is no explicit requirement that a declaration state that it is based on personal knowledge.  Fed. R. Civ. P. 56(e); see DIRECTV, Inc. v. Budden, 420 F.3d 521, 530 (5th Cir. 2005) ("while an affidavit certainly can state that it is based on 'personal knowledge,' there is no requirement for a set of magic words" (citations omitted)).  As long as the declarant is one who is within the "sphere of responsibility" regarding the information on which he is testifying, the court may infer that the declarant contains the requisite personal knowledge and is competent to testify.  Budden, 420 F.3d at 530 (citing Hodges v. Exxon Corp., 563 F. Supp. 667, 669-70 (M.D. La. 1983)).

Here, Mr. Infanti is identified in the Trustee's Memorandum of Law as an accountant representing the estates. A declarant who is the accountant for the estates is clearly within the "sphere of responsibility" regarding information as to the estates' estimated distributions in a chapter 7 liquidation case. Therefore, the Court finds that Mr. Infanti has the personal knowledge and competency to testify on this point as required by Rule 56(c)(4).

RPG further asserts that Mr. Infanti must provide specific facts in his declaration that are more than the simple averment that unsecured creditors will receive less that 100% in a chapter 7 liquidation. However, "there is some room for debate as to how 'specific' must be the 'specific facts' that Rule 56(e) requires in a particular case." Lujan v. Nat. Wildfire Fed'n, 497 U.S. 871, 889 (1990). In actuality, in cases involving the greater amount test, bankruptcy courts have not required more specific facts. See, e.g., Pioneer Tech., Inc. v. Eastwood (In re Pioneer Tech., Inc.), 107 B.R. 698, 701 (B.A.P. 9th Cir. 1988) (holding that an affidavit of the debtor's comptroller without any corroborating evidence regarding the greater amount test was sufficient to support a grant of summary judgment in favor of the debtor); Levine v. Custom Capret Shop, Inc. (In re Flooring Am., Inc.), 302 B.R. 394, 403 (Bankr. N.D. Ga. 2003) ("The plaintiff in a preference action need not actually reconstruct a

13

hypothetical Chapter 7 liquidation, with the precision of a
forensic accountant, but may rely on an affidavit of one of the
debtor's financial officers . . . to establish that . . . non-
priority unsecured creditors would have received less than 100%
of their claims in a Chapter 7 liquidation."); Tire Kings of Am.,
Inc. v. Hoffman Tire Co. (In re Tire Kings of Am., Inc.), 164
B.R. 40 (Bankr. M.D. Pa. 1993) (finding that the plaintiff
satisfied the greater amount test simply because the liabilities
listed in the petition were greater than its assets).  Therefore,
the Court concludes that the declaration of Mr. Infanti, the
accountant for the Debtors' estates, stating that unsecured
creditors would receive less than 100% in a hypothetical chapter
7 liquidation is sufficient evidence to satisfy the greater
amount test.

Having met the five requirements of section 547(b), the
Court finds that the Trustee has made a prima facie showing that
the Prepetition Transfers were preferential.

2.   Section 547(c)

Once the plaintiff has made a prima facie showing that a
transfer constitutes a preference under section 547(b), the
burden shifts to the defendant to establish a defense under
section 547(c).  11 U.S.C. § 547(g); see Burtch v. Conn. Cmty.
Bank, N.A. (In re J. Silver Clothing, Inc.), 453 B.R. 518, 527
(Bankr. D. Del. 2011).  RPG asserts three defenses: (i) that the

14

Prepetition Transfers were contemporaneous exchanges for new
value under section 547(c)(1), (ii) that the Prepetition
Transfers were made in the ordinary course of business under
section 547(c)(2), and (iii) that the Prepetition Transfers gave
new value to or for the benefit of the Debtors under section
547(c)(4).

The Trustee argues that RPG has failed to meet its burden
because the affidavit of James Barber, a senior consultant at
RPG, on which RPG most heavily relies, does not satisfy the
requirements of Rule 56(c)(4).

a.   Contemporaneous Exchange for New Value

Section 547(c)(1) states that the trustee may not avoid a
transfer if it was intended to be a "contemporaneous exchange for
new value given to the debtor" and the transfer was
"substantially contemporaneous . . . ."  11 U.S.C. § 547(c)(1).
Under this defense, it must be established that (i) the defendant
extended new value to the debtor, (ii) the parties intended the
new value and the transfer at issue be a contemporaneous
exchange, and (iii) the exchange was substantially
contemporaneous.  Hechinger Inv. Co. of Del., Inc. v. Universal
Forest Products, Inc. (In re Hechinger Inv. Co. of Del., Inc.),
489 F.3d 568, 574 (3d Cir. 2007); APS Holding Corp. v. ABX
Enters., Inc. (In re APS Holding Corp.), 282 B.R. 795, 800
(Bankr. D. Del. 2002).  Most critical to making this

15

determination is the intent of the parties.  See <u>Creditors' Comm.</u>
<u>v. Spada (In re Spada)</u>, 903 F.2d 971, 975 (7th Cir. 1990) ("The
critical inquiry in determining whether there has been a
contemporaneous exchange for new value is whether the parties
intended such an exchange." (internal quotations omitted)).

Here, the Trustee does not challenge the first element of
section 547(c)(1), that the Prepetition Transfers extended new
value to the debtor.  Rather, the Trustee asserts that the Barber
affidavit is insufficient to establish the intent of the parties
and that the lateness of the payments establishes that the
Prepetition Transfers could not be a contemporaneous exchange.
In reply, RPG argues that the Prepetition Transfers were made to
continue insurance coverage and the parties' intentions can be
inferred from their actions.

An inquiry by the Court into the intent of the parties
begins with the agreement.  See <u>In re Llewellyn & Co.</u>, 929 F.2d
424, 428 (8th Cir. 1991); <u>Spada</u>, 903 F.2d at 975; <u>Everlock</u>
<u>Fastening Sys., Inc. v. Health Alliance Plan (In re Everlock</u>
<u>Fastening Sys., Inc.)</u>, 171 B.R. 251, 255 (Bankr. E.D. Mi. 1994).
In determining the intent of the parties, the Court may consider
the course of dealings between the parties.  <u>Everlock</u>, 171 B.R.
at 255.

Although, RPG does not include a copy of the agreement, the
Barber affidavit states that the agreement requires the Debtors

16

to make timely payments or risk cancellation of the policy.  The Trustee does not refute this.  Therefore, the Court finds that the parties intended the exchange to be a contemporaneous exchange for new value, that is the future insurance coverage.

Lastly, RPG must establish whether the Prepetition Transfers were, in fact substantially contemporaneous.  The Trustee argues that the payments cannot be contemporaneous because they were paid late.  RPG argues that the fact that the majority of Prepetition Transfers were made within a month of the time they were due establishes that they were substantially contemporaneous.

The antecedent debt requirement under section 547(b) and the contemporaneous exchange requirement in section 547(c)(1) can be easily confused.  The Trustee is mistaken in arguing that simply because the Prepetition Transfers were late means that they are not contemporaneous.  If that were the case, section 547(c)(1) would be superfluous and unnecessary.  DeGiacomo v. Draper Knitting Co. (In re Jannel Indus., Inc.), 245 B.R. 757, 760 (Bankr. D. Mass. 2000) (holding that a section 547(c)(1) "defense does not even come into play unless the payment is for an antecedent debt" (emphasis in original)).

When determining if a transfer was substantially contemporaneous, the Court may consider many factors.  See Pine Tops Ins. Co. v. Bank of Am. Nat, Trust & Sav. Assoc., 969 F.2d

17

321, 328 (7th Cir. 1992) ("The modifier 'substantial' makes clear
that contemporaneity is a flexible concept which requires a case-
by-case inquiry into all relevant circumstances."); Bridge Info.
Sys., 321 B.R. at 256 ("Because the statute only requires that
the exchange be substantially contemporaneous with the creditor's
provision of new value, the determination of whether the exchange
was in fact contemporaneous is a flexible one.").

When dealing with the payment of insurance premiums, courts
have generally found that payments made within a month of the
time they become due are substantially contemporaneous.  See,
e.g., Davis v. I.P.H.F.H.A., Inc. (In re Amarillo Mesquite Grill,
Inc.), 355 B.R. 826, 837 (Bankr. D. Kan. 2006) ("Had [the debtor]
paid insurance premiums for insurance coverage during the same
month the coverage was provided, it may have qualified as a
substantially extemporaneous exchange."); Kapila v. Acme Portable
Machines, Inc. (In re I.M. Import & Export, Inc.), Nos. 99-16835-
BKC-AJC, 00-1499-BKC-AJC, 2001 WL 214026 at *6 (Bankr. S.D. Fla.
Feb. 27, 2001) ("Moreover, the checks were presented and paid . .
. within 30 days.  Thus, it appears that the transfers were in
fact substantially contemporaneous exchanges."); Everlock, 171
B.R. at 255 (finding that an insurance payment was substantially
contemporaneous as long as it was paid the month it was owed).

In this case, three of the four Prepetition Transfers were
made within a month of the time they became due ("Transfers 1-

18

3"). The fourth transfer ("Transfer 4"), however, was made almost three months after the due date. While factors other than the timing of the payment may be considered to determine whether a payment is substantially contemporaneous, such information is lacking here. Thus, the Court finds that Transfers 1-3 were substantially contemporaneous, but finds that there is a genuine issue of material fact as to whether Transfer 4 was substantially contemporaneous. Therefore, the Court will grant Summary Judgment on Transfers 1-3 because they were contemporaneous exchanges for new value under section 547(c)(1).

### b.   Ordinary Course of Business

Section 547(c)(2) states that a trustee may not avoid a transfer if "such transfer was in payment of a debt incurred in the ordinary course of business" if the transfer was "(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms." 11 U.S.C. § 547(c)(2). Subsection (A) is a subjective test that determines whether the transaction was done in the ordinary course between the two parties while subsection (B) is an objective test that determines if the transaction is ordinary for the industry. Amarillo Mesquite Grill, 355 B.R. at 834 (citing Payne v. Clarendon Nat. Ins. Co. (In re Sunset Sales, Inc.), 220 B.R. 1005, 1020-21 (B.A.P. 10th Cir. 1998)).

RPG argues that the Prepetition Transfers satisfy both the

19

subjective and objective test.  According to RPG and the Barber
affidavit, late payments by the Debtors of two to three months
were in the normal course of dealings throughout their
relationship and were also in line with the industry norm.  The
Trustee disagrees asserting that the timing of the Prepetition
Transfers discredits the bald assertion made in the Barber
affidavit that they were made within the ordinary course of
business.

When determining whether a transaction was done in the
ordinary course of business, courts have consider a myriad of
factors including: prior course of dealings between the parties,
length of time of dealings between parties, amount of payments,
timing of payments, circumstances surrounding payments, existence
of any unusual debt collection practices, and changes in means of
payment.  See Yurika Foods Corp. v. United Parcel Serv. (In re
Yurika Foods Corp.), 888 F.2d 42, 45 (6th Cir. 1989); Marathon
Oil Co. v. Flatau (In re Craig Oil Co.), 785 F.2d 1563, 1566
(11th Cir. 1986); Sass v. Vector Consulting, Inc. (In re Am. Home
Mortg. Holdings, Inc.), 476 B.R. 125, 135-36 (Bankr. D. Del.
2012); Scharffenberger v. United Creditors Alliance Corp. (In re
Allegheny Health, Educ., and Research Found.), 292 B.R. 68, 79
(Bankr. W.D. Pa. 2003).

With respect to the only remaining Prepetition Transfer,
Transfer 4, the factors most relevant are the timing of the

20

payment and the means of payment.  The Barber affidavit states
that the Debtors regularly made payments within two to three
months after they became due without specifying the method of
payment of those transfers.  Transfer 4 was made within the two
to three month period after the payment was due as suggested in
the Barber affidavit to be in the ordinary course.  However,
Transfers 1-3, the only other transfers addressed within the
Barber affidavit, were made within one month of the time they
became due.[5]  This directly contradicts the Barber affidavit
assertion that payments were typically made within two to three
months after they were due.  Also, Transfers 1-3 were paid by
check.  Transfer 4 was made by wire transfer.  The Barber
affidavit offers no information on any other payment made by wire
transfer as compared to payments made by check and offers no
explanation as to how these differences were in the ordinary
course of business, either between the Debtors and RPG or in the
industry generally.  As a result, there exists a genuine issue of
material fact as to whether Transfer 4 was made in the ordinary
course of business.  Therefore, the Court will not grant Summary
Judgment on this ground.

---

[5]  For purposes of section 547(c)(2), the delivery date of
the check, not the clear date, is used to determine if the
transfer was made in the ordinary course of business.  Montgomery
Ward, LLC v. OTC Int'l Ltd. (In re Mongomery Ward, LLC), 348 B.R.
662, 676 n. 6 (Bankr D. Del. 2006).

c.   New Value

Section 547(c)(4), known as the new value defense, "allows a creditor to retain an otherwise voidable preference if the creditor gave the debtor new value after the preferential transfer." New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.), 880 F.2d 679, 679 (3d Cir. 1989). See also 11 U.S.C. § 547(c)(4).  RPG argues that because payment ensures future coverage, the Prepetition Transfers gave the Debtors new value after the payments were made.  The Trustee, however, argues that the Prepetition Transfers are not subject to the new value defense because RPG has failed to provide any evidence as to what future period the Prepetition Transfers provided new value in the form of insurance coverage.

To rely on the new value defense, RPG must establish that the transfer was made before the new value was given.  Butler v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.), 321 B.R. 388, 395 (Bankr. D. Del. 2005).  Here, it has been established that the premiums the Debtors paid to RPG were for future coverage as is the case with most insurance policies. While Transfers 1-3 were paid within a month of the time they were due, Transfer 4 was not paid until almost three months after the time it was due.  There is no evidence presented about what period of insurance coverage Transfer 4 provided.  As a result, there exists a genuine issue of material fact as to whether

22

Transfer 4 was made for new value.  Therefore, the Court will deny summary judgment for RPG on this defense with respect to Transfer 4.

    B.   Disallowance of Claim

Pursuant to section 502(d), "the court shall disallow any claim of an entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a)" unless the transferee returns such property to the estate.  11 U.S.C. § 502(d).  In other words, "502(d) disallows the claim of a creditor that received a transfer avoidable under chapter 5 of the bankruptcy code unless the creditor returns the transfer to the estate."  In re Asia Global Crossing Ltd., 344 B.R. 247, 251 (Bankr. S.D.N.Y. 2006).

RPG argues that its claim should not be disallowed because it is entitled to summary judgment on all of the underlying chapter 5 claims.  See Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.), 339 B.R. 570, 577 (Bankr. D. Del. 2006) (holding a § 502(d) objection should be dismissed where there is no possible underlying avoidance action on which the objection is dependent).  However, here, RPG's Motion only sought to dismiss the Trustee's preference claim.  As stated previously, the Complaint also contains actions for fraudulent transfers under section 548 and improper postpetition transfers

23

under section 549, neither of which are being decided at this time and both of which, if successful, would provide a basis for disallowing RPG's claim under section 502(d).  Thus, the Court will deny summary judgment for RPG as to Count 5 of the Complaint at this time.

V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will grant RPG's Motion for Summary Judgment on Count 1 of the Complaint for Transfers 1-3 but deny the Motion as to Transfer 4.  The Court will also deny the Motion for Summary Judgment as to the disallowance of claims under Count 5 of the Complaint at this time.

An appropriate Order is attached.

Dated: June 4, 2013                    BY THE COURT:

                                       Mary F. Walrath
                                       United States Bankruptcy Judge

24